IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| **MICHAEL MCCUE, individually and as** | ) | |
| **Personal representative of the estate of** | ) | |
| **Phillip McCue, Deceased** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **V.** | ) | |
| | ) | |
| **CITY OF BANGOR, MAINE** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **BANGOR, MAINE POLICE DEPARTMENT** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **OFFICER KIM DONNELL** | ) | |
| **Bangor, Maine Police Department** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **and** | ) | |
| | ) | |
| **OFFICER RYAN JONES** | ) | |
| **Bangor, Maine Police Department** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **OFFICER WADE BETTERS** | ) | |
| **Bangor, Maine Police Department** | ) | |
| | ) | **COMPLAINT** |
| **and** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **OFFICER JOSHUA KUHN** | ) | |
| **Bangor, Maine Police Department** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **OFFICER DAVID FARRAR** | ) | |
| **Bangor, Maine Police Department** | ) | |
| | ) | |

**and**                                                     )
                                                            )
**OFFICER CHRIS BLANCHARD**                                 )
**Bangor, Maine Police Department**                         )
                                                            )
**and**                                                     )
                                                            )
**JOHN AND/OR JANE DOES (1-10)**                            )
**BANGOR, MAINE RESPONDING POLICE**                         )
**OFFICERS**                                                )
**Bangor, Maine Police Department**                         )
                                                            )
**and**                                                     )
                                                            )
**JOHN AND/OR JANE DOES (1-10)**                            )
**BANGOR, MAINE SUPERVISING POLICE**                        )
**OFFICERS**                                                )
**Bangor, Maine Police Department**                         )
                                                            )
**and**                                                     )
                                                            )
**JOHN AND/OR JANE DOES (1-10)**                            )
**BANGOR, MAINE RESPONDING**                                )
**FIRE DEPARTMENT**                                         )
**OFFICERS**                                                )
**Bangor, Maine Fire Department**                           )
                                                            )
**and**                                                     )
                                                            )
**TASER INTERNATIONAL, INC.**                               )
**17800 N. 85th St.**                                       )
**Scottsdale, AZ 85255-6311 USA**                           )

Plaintiff Michael McCue, Individually and as Personal Representative of the Estate of

Phillip McCue, Deceased, by and through his undersigned attorneys, hereby files suit against

the above-captioned Defendants, and in support thereof, states as follows.

## SUMMARY OF CLAIMS

This is an action brought by the Personal Representative of the Estate of Phillip McCue, Deceased, individually and as Personal Representative of the said Estate.  Phillip McCue was, on September 12, 2012, unlawfully and in violation of the Fourth and Eighth Amendments of the United States Constitution, and in violation of his civil rights ó as captured and preserved by audio and videotape ó and despite being peaceful and presenting no threat to himself or to any other person, detained, tased, brought to the ground forcefully, hog-tied, otherwise subjected to improper restraints and ultimately killed by officers of the Bangor Police Department, as well as denied emergency and necessary medical care and treatment which might have saved his life by officers of the said Police Department and Bangor Fire Department.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action against the Defendants pursuant to 42 U.S.C. §1983 as well as 28 U.S.C. § 1331. This Court has jurisdiction over the pendant state law tort claims pursuant to 28 U.S.C. §1367(a).

2. Venue is properly vested in this Court because Plaintiff and the Defendants are residents of this District, the acts complained of occurred within the jurisdiction of this District (specifically, Penobscot County, Maine), and the Defendant product-manufacturer (Taser International, Inc.) conducts regular and significant business within this District.

## PARTIES

3. Plaintiff Michael McCue is the duly-appointed Personal Representative of the Estate of

Phillip McCue, Deceased, and the father of Phillip McCue.  At all times relevant hereto, Plaintiff resided within this District.

4.    Defendant City of Bangor, Maine is a city situated in the State of Maine, organized as such under the laws of the State.  At all relevant times hereto, the said City of Bangor, Maine acted by and through its agents, servants and/or employees. It is responsible for the policies, procedures, practices and customs created, promulgated, implemented and enforced at the Bangor, Maine Police Department and the Bangor, Maine Fire Department, through its various agencies, agents, departments, representatives, officials, and/or employees.

5.    Defendant Bangor, Maine Police Department is a police department in the State of Maine, duly organized as such under the laws of the State. At all relevant times hereto, the said Defendant Bangor, Maine Police Department acted by and through its agents, servants and/or employees. It is responsible for the policies, procedures, practices and customs created, promulgated, implemented and enforced at the Bangor, Maine Police Department, through its various agencies, agents, departments, representatives, officials, and/or employees.

6.    Upon information and belief, Defendant Officer Kim Donnell is and was at times relevant an officer employed by the Bangor Police Department.  Defendant Donnell is sued here individually and in her capacity as an officer of the Bangor Police Department.

7.    Upon information and belief, Defendant Officer Ryan Jones is and was at times relevant an officer employed by the Bangor Police Department.  Defendant Jones is sued here individually and in his capacity as an officer of the Bangor Police Department.

8.    Upon information and belief, Defendant Officer Wade Betters is and was at times

relevant an officer employed by the Bangor Police Department.  Defendant Betters is sued here individually and in his capacity as an officer of the Bangor Police Department.

9.  Upon information and belief, Defendant Officer Joshua Kuhn is and was at times relevant an officer employed by the Bangor Police Department.  Defendant Kuhn is sued here individually and in his capacity as an officer of the Bangor Police Department.

10.  Upon information and belief, Defendant Officer David Farrar is and was at times relevant an officer employed by the Bangor Police Department.  Defendant Farrar is sued here individually and in his capacity as an officer of the Bangor Police Department.

11.  Upon information and belief, Defendant Officer Chris Blanchard is and was at times relevant an officer employed by the Bangor Police Department.  Defendant Blanchard is sued here individually and in his capacity as an officer of the Bangor Police Department.

12.  Defendants John and/or Jane Does (1-10) Bangor, Maine Responding Police Officers are individuals who were, at all relevant times hereto, responding Police Officers of the Bangor, Maine Police Department, operating in the course and scope of their employment, and under the color and guise of the laws of the State of Maine. The specific identity of these defendants are presently unknown to Plaintiff, but upon positive identification will be properly served with process, and their individual names will added to this Complaint in accordance with the applicable federal rules. These Defendants will presently be referred to as John and/or Jane Does (1-10) Bangor, Maine Responding Police Officers, all of whom were physically present at the September 12, 2012 incident described in this Complaint.

13.  Defendant Officers Donnell, Jones, Betters, Kuhn, Farrar, Blanchard and Defendants John and/or Jane Does (1-10) Bangor, Maine Responding Police Officers are referred to herein collectively as õResponding Police Officersö.

14.    Defendants John and/or Jane Does (1-10) Bangor, Maine Supervising Police Officers are individuals who were, at all relevant times hereto, supervising Bangor, Maine Police Officers, operating in the course and scope of their employment, and under the color and guise of the laws of the State of Maine. The specific identity of these defendants are presently unknown to Plaintiff, but upon positive identification will be properly served with process, and their individual names will added to this Complaint in accordance with the applicable federal rules. These Defendants will presently be referred to as John and/or Jane Does (1-10) Bangor, Maine Supervising Police Officers, or collectively as ōSupervising Police Officersö, all of whom had responsibility for the creation, promulgation, implementation and/or enforcement of polices, procedures, practices and customs in the Bangor, Maine Department including, but not limited to, such policies, procedures, practices and customs that relate to electronic control weapons (including tasers), use of pepper/chemical spray, physical restraint of suspects, conflict resolution, force continuum and first aid.

15.    Defendants John and/or Jane Does (1-10) Bangor, Maine Responding Fire Department Officers are individuals who were, at all relevant times hereto, responding Officers of the Bangor, Maine Fire Department, operating in the course and scope of their employment, and under the color and guise of the laws of the State of Maine. The specific identity of these defendants are presently unknown to Plaintiff, but upon positive identification will be properly served with process, and their individual names will added to this Complaint in accordance with the applicable federal rules. These Defendants will presently be referred to as John and/or Jane Does (1-10) Bangor, Maine Responding Fire Department Officers, or collectively as ōResponding Fire Officersö, all of whom were physically present at the

September 12, 2012 incident described in this Complaint

16.　Defendant Taser International, Inc. (hereinafter "Defendant Taser") is a corporation that designs, manufactures, distributes, and sells electronic control weapons ("ECWs"), including the tasers at issue in this case. Upon information and belief, Defendant Taser provides training and training materials for ECWs, including the tasers at issue in this case.

## FACTUAL BACKGROUND

17.　Plaintiff incorporates by reference all of the above paragraphs as if set forth fully herein.

18.　On September 12, 2012, in the minutes prior to his killing, Phillip McCue was present at a premises in Bangor known to be frequented by abusers of bath salts. A call came to the Bangor Police Department with regard to a disturbance at that location. Police were dispatched. Phillip McCue departed the premises contemporaneously with the dispatch of police officers.

19.　Phillip McCue can be seen walking down Main Street in Bangor (near the Bangor Police Department) on videotape, and, at one point, communicating with responding police officers in a calm, non-agitated and non-hostile manner. Despite Phillip McCue's calm demeanor and presentation, the police dialogue captured in the subject audiotape suggests a clear intention to taze and apprehend him, even though he was committing no crime and, at most, was inappropriately "walking in the street".

20.　Although Phillip McCue's oral communication with the police was calm and respectful, and the officers acknowledged that same was not a threat, the police nonetheless utilized same as a pretext to mock, detain and taze him.

21.   Phillip McCue was thereupon taken down forcefully by multiple police officers.

22.   From the point that Phillip McCue was taken down until his death, a clear and unambiguous video and audio record exists demonstrating Phillip McCue down on the ground, being hog-tied and being held down at his neck, shoulder, mid-chest and lower extremities by three (and at times four) officers.  During the period captured by the said video, Phillip McCue is seen repeatedly kicking and struggling for air, protesting that he hurt, being struck multiple times, including several times in rapid sequence, and once viciously in the lower back and finally becoming non-responsive, ultimately being taken unconscious and limply (but still restrained) from the ground to the police vehicle.

23.   Unresponsive, Phillip McCue was taken and placed in the back of the police car face down still handcuffed.  Associated EMT materials reveal that upon arrival of the EMT, Phillip McCue had to be removed from the police vehicle – where he had been placed face-down – and his handcuffs had to be removed, before he was taken to the ambulance and there triaged, where life assessment and support was then initially provided. Phillip McCue was throughout that period non-responsive and, upon information and belief, in the late stages of brain death.

24.   Throughout his ordeal, Phillip McCue struggled for air and for life.  Yet his struggles led to further police aggressive compression of his body, the compression which led ultimately to his death.

25.   Following Phillip McCue's death by police, as captured on the audio and video record, police officers are clearly heard to be engaging in what can only be deemed to be mockery of Phillip McCue, efforts to minimize their wrongdoing, coordinate their

stories and to avoid any potential adverse fall-out or personal responsibility from their killing of Phillip McCue.

26.   As detailed above, on September 12, 2012, Phillip McCue died while in the custody of Responding Police Officers, as supervised and overseen by the Supervising Police Officers, and in the care of the Responding Fire Officers.

27.   As detailed above, Phillip McCue, at all material times during the incidences more particularly described herein, did not act and/or did not continue to act in a manner that presented a threat of serious injury or harm to the Responding Police Officers, Supervising Police Officers and/or Responding Fire Officers.

28.   However, at all times relevant, Phillip McCue was demonstrating and/or had demonstrated a shortness of breath and had had a history of mental and/or emotional disabilities.

29.   Upon information and belief, all or some of the Responding Police Officers and/or Supervising Police Officers knew or should have known that Phillip McCue was afflicted with mental and/or emotional disabilities including, upon information and belief, excited delirium.

30.   However, upon information and belief, none of the Responding Police Officers, Supervising Police Officers or Responding Fire Officers ever requested, called, or otherwise considered a Crisis Intervention Team ("CIT") or any similar unit or backup personnel which possessed adequate training for interventions with a person suffering from a mental or emotional disability including, upon information and belief, excited delirium, or potentially suffering from a mental or emotional disability including, upon information and belief, excited delirium.

31.   All of the Responding Police Officers and all of the Supervising Police Officers were under an obligation and duty to abide by applicable force continuums, including the use of

electronic control weapons (including tasers), pepper/chemical spray, and physical restraint, so as to avoid serious and fatal injuries to all individuals seized or in the process of being seized, including Phillip McCue.

32. The Responding Police Officers (1) detained Phillip McCue without legal cause; (2) discharged taser ECWs one or multiple times, striking Phillip McCue, thereby subjecting Phillip McCue to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith, as well as enhanced and unreasonably dangerous respiratory strain and distress; (3) failed to check on the condition of, resuscitate, evaluate or otherwise assess Phillip McCue's physical condition post-tase; (4) utilized significant and unreasonably dangerous physical restraint techniques upon Phillip McCue, including the use of rope to bind Phillip McCue, causing Phillip McCue to sustain significant bodily injuries, thereby enhancing Phillip McCue's respiratory and circulatory strain and distress; (5) gratuitously, viciously and unnecessarily struck Phillip McCue's body repeatedly and (6) otherwise failed to provide any necessary, material or timely first aid to Phillip McCue, following their application of ECWs and/or significant physical restraint techniques and/or violent strikes to his body, thereby significantly and unreasonably reducing the likelihood of survival, including a failure to properly deal with excited delirium.

33. The Supervising Police Officers did not order that necessary, material and timely first aid be provided to Phillip McCue following the application of ECWs and/or significant physical restraint techniques and/or violent strikes to his body, did not allow necessary, material and timely first aid to be provided to Phillip McCue following the application of ECWs and/or significant physical restraint techniques and/or violent strikes to his body, including a failure to properly deal with excited delirium, and personally provide

necessary, material and timely first aid to Phillip McCue following the application of ECWs and/or significant physical restraint techniques and/or violent strikes to his body, thereby significantly and unreasonably reducing the likelihood of survival.

34.   The Responding Fire Officers did not provide necessary, material and timely first aid to Phillip McCue following the application of ECWs and/or significant physical restraint techniques and/or violent strikes to his body, including a failure to properly deal with excited delirium, thereby significantly and unreasonably reducing the likelihood of survival.

35.   Following a significant passage of time after the administration of ECWs and/or significant physical restraint techniques and/or violent strikes to his body, Phillip McCue was carried (non-responsive and likely brain dead), although still restrained, into a police cruiser and laid there face down, and, subsequently and after unnecessary delay, loaded into an ambulance.

36.   Phillip McCue died as the direct and proximate result of the foregoing actions and omissions of the Responding Police Officers, Supervising Police Officers and/or Responding Fire Officers.

37.   After the incidents described above, certain of the responding Police Officers attempted to corroborate their stories and to create fictitious account(s) of the preceding events in an effort to avoid personal, individual and/or collective responsibility for the death of Phillip McCue.

38.   The conduct of Defendants, as set forth above and herein, violated Phillip McCue's constitutional rights as guaranteed by the United States Constitution, and as remediable pursuant to 42 U.S.C. §1983.

39. At all times relevant hereto, the Defendants acted under the color and guise of state and local laws.

40. The conduct of the Defendants as set forth above and herein, acting under the color and guise of state and local law, was recklessly and deliberately indifferent to the safety, bodily integrity, well-being, and life of Phillip McCue, and was committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to Phillip McCue, and was so egregious as to shock the conscience.

41. At all times relevant hereto, Phillip McCue was in the custody of the Defendants, or was in the process of being placed into custody, thereby creating a special relationship between the Defendants and Phillip McCue. As such, the Defendants were entrusted with and responsible for Phillip McCue's protection, safety, well being and life while he was within their custody, or was in the process of being placed into their custody, and the Defendants were, likewise, required to, provide reasonable, appropriate and timely medical care and treatment to Phillip McCue.

42. As a direct and proximate result of the Defendants' conduct, as described above and herein, Phillip McCue was caused to suffer grievous physical injuries, significant conscious pain and suffering, including a grievous conscious knowledge of impending death, and an agonizing death.

43. The proximate conduct of the Defendants, as described above and herein, including particularly the Defendantsø mockery of Phillip McCue and post-killing efforts to hide their wrongdoing, was undertaken in bad faith and with malice, bad motive, evil intent and deliberate and/or reckless indifference to and callous disregard for Phillip McCue's constitutional rights to be free from physical assault causing grievous injuries, harm and

death under the Fourteenth Amendment to the United States Constitution, as well as Phillip McCue's right to appropriate and timely medical care as a result of being in (or in the process of being placed in) the custody of the Defendants.

44.   Alternatively, Defendants have acted with malice towards Plaintiffs or, alternatively, the actions of Defendants have been of such an egregious and outrageous character and nature that malice can be inferred therefrom or malice is implied therein.

45.   Upon information and belief, all ECWs utilized on Phillip McCue were designed, manufactured, tested, marketed, distributed, and sold by Defendant Taser.

46.   During his custody, Phillip McCue was tased.

## COUNT I
## DETAINER/SEIZURE WITHOUT LEGAL CAUSE, USE OF UNREASONABLE, MALICIOUS AND/OR EXCESSIVE FORCE AND DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS VIOLATION OF CIVIL RIGHTS

47.   Plaintiff incorporates by reference all of the above paragraphs as if set forth fully herein.

48.   On September 12, 2012, the Defendants, despite being aware that Phillip McCue was already short of breath and suffered from mental and emotional disabilities, upon information and belief was suffering from excited delirium, and in violation of Phillip McCue's civil rights, detained him without legal cause and utilized unreasonable, malicious, and/or excessive and unreasonably dangerous force on Phillip McCue including, without limitation upon the generality of the foregoing, the dischargement of one or more ECWs on Phillip McCue, without adequate and necessary resuscitation and/or immediate and urgent medical attention for the injuries he

had sustained, being subjected to significant and unreasonably dangerous physical restraint methods, including being hog-tied with rope and/or handcuffs and the placing of human body weight upon his body and being subjected to violent and repeated physical blows; intentionally, recklessly, and/or negligently denied and/or refused and/or failed to render appropriate and/or timely medical aid to Phillip McCue and and/or unreasonably prevented or delayed timely emergency medical assistance and treatment from EMS personnel.

49.   The Defendants possessed neither the right nor the authority to utilize unreasonable, malicious, and/or excessive and unreasonably dangerous force on Phillip McCue or to disregard the obvious, urgent and serious medical needs of Phillip McCue and by such actions and inactions demonstrated deliberate indifference to Phillip McCue. The actions and inactions of the Defendants as described above constitute willful and wanton misconduct in disregard of the rights, health, well-being and safety of Phillip McCue, including with respect to post-death efforts to shift blame, and warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, for compensatory damages, for punitive damages and for costs far in excess of the minimum jurisdictional threshold of this Court and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT II
## ASSAULT AND BATTERY

50.   Plaintiff incorporates by reference all of the above paragraphs as if set forth fully herein.

51. The foregoing actions and omissions constitute actionable assault(s) and battery(s) upon Phillip McCue.

      **WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, for compensatory damages, for punitive damages and for costs far in excess of the minimum jurisdictional threshold of this Court and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.


**COUNT III**
**FAILURE TO TRAIN AND SUPERVISE PERSONNEL**
**VIOLATION OF CIVIL RIGHTS**

52. Plaintiff incorporates by reference all of the above paragraphs as if set forth fully herein.

53. Phillip McCue had fundamental and well-established rights to be free from unlawful detainer by Defendants, unreasonable, malicious, excessive and dangerous force by the Defendants, and to not be denied access to medical care and treatment for legitimate medical needs once he was seized, in the process of being placed in custody, or in the custody of the Law Enforcement Defendants including, upon information and belief, excited delirium.

54. The unlawful detaining of Phillip McCue, infliction of unreasonable, malicious, excessive and dangerous force upon Phillip McCue by the Defendants, and the Defendant's subsequent failure to provide Phillip McCue with adequate and timely medical care, violated Phillip McCue's substantive rights guaranteed by the United State Constitution.

55. The violations of Phillip McCue 's substantive constitutional rights, and his resulting catastrophic injuries and death, were caused by the Supervising Police Defendants' failure(s) to properly supervise, educate, instruct, train and/or control their personnel in

general, as well as in the following specific respects: (a) Failing to adequately supervise, instruct, train, and educate their officers in regard to unlawful detainings and seizures of individuals; (b) Failing to adequately supervise, instruct, train, and educate their officers respecting force continuums, and ensure that force continuums were properly implemented, enforced and followed, so as to expose members of the public, including Phillip McCue, to the least possible level of force, including no force whatsoever; (c) Failing to adequately supervise, instruct, train, and educate their officers in regard to interactions with individuals suffering from mental and emotional health issues, including upon information and belief excited delirium, including Phillip McCue, so that proper communication can occur, and potentially violent confrontations can be avoided, including, but not limited to, recognizing the need for a Crisis Intervention Team and requesting assistance therefrom; (d) Failing to adequately supervise, instruct, train, and educate their officers in the proper use of ECW deployment, assessment and resuscitation, including any warning(s) prior to use; (e) Failing to adequately supervise, instruct, train, and educate their officers regarding the increased risk of serious injury or death that accompanies a prolonged electrical shock administered by the ECW; (f) Failing to adequately supervise, instruct, train, and educate their officers in the proper use of significant physical restraint methods (including but not limited to the use of rope) including when an ECW has additionally been deployed; (g) Failing to adequately supervise, instruct, train, and educate their officers to recognize the signs of pre-existing respiratory distress, including upon information and belief excited delirium, and the resulting health ramifications associated with using ECW, and significant physical restraint methods (including tying

up with rope) on such persons; (h) Failing to adequately supervise, instruct, train, and educate their officers to recognize the signs of pre-existing circulatory distress, including upon information and belief excited delirium,  and the resulting health ramifications associated with using ECWs, and significant physical restraint methods on such persons; (i) Failing to adequately supervise, instruct, train, and educate their officers to recognize the signs of pre-existing mental and/or emotional health disabilities, including upon information and belief excited delirium, and the resulting health ramifications associated with using ECWs, and significant physical restraint methods on such persons; (j) Failing to adequately instruct, train, educate, and warn their officers that ECWs are capable of producing lethal injuries; (k) Failing to adequately instruct, train, educate, and warn their officers that ECWs combined with the use of significant physical restraints, are capable of producing lethal injuries; (l) Failing to provide appropriate medical training for their officers, including medical training that would allow their officers to recognize and/or treat time life threatening conditions incurred by Plaintiff-decedent as a result of ECW deployment and/or being subjected to significant physical restraint methods (including being tied up with rope); (m) Failing to adequately supervise, instruct, train, and educate their officers to call for EMS personnel and/or provide EMS personnel with timely access to persons suffering from life-threatening conditions, including Plaintiff-decedent; and (n) Failing to create, maintain, disseminate, promulgate, update, and enforce reasonable written and unwritten policies prohibiting unreasonable, malicious, and excessive use of force against persons by their officers.

56.    The above-referenced failures of the Supervising Police` Defendants directly and

proximately led to the suffering and death of Phillip McCue.

57.    The foregoing failures of the Supervising Police Officers constitute willful and wanton misconduct in disregard of the rights, health, well-being and safety of Phillip McCue; and warrant the imposition of punitive damages.

        **WHEREFORE**, Plaintiff demands judgment against the Supervising Police Officers Defendants jointly and severally, for compensatory damages, for punitive damages and for costs far in excess of the minimum jurisdictional threshold of this Court and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT IV
## RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

58.    Plaintiff incorporates by reference the above referenced paragraphs as if set forth fully herein.

59.    In committing the actions and/or inactions described above and herein, the Responding Police and Fire Officers were acting, at all relevant times, within the course and scope of their employment for their respective departments.

60.    The said Defendants City of Bangor, Bangor Police Department and Bangor Fire Departments are liable as principals for all torts committed by their respective agents and/or employees upon Phillip McCue.

        **WHEREFORE**, Plaintiff demands judgment against Defendants City of Bangor, Bangor Police Department and Bangor Fire Departments jointly and severally, for compensatory damages, for punitive damages and for costs far in excess of the minimum

jurisdictional threshold of this Court and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT V
## STRICT PRODUCTS LIABILITY (TASER)

61.   Plaintiff incorporates by reference all of the above paragraphs as if set forth fully herein.

62.   Defendant Taser is in the business of manufacturing, designing, testing, assembling, marketing and selling ECWs, including the taser(s) that was/were used on Phillip McCue.

63.   The subject taser was defective and unreasonably dangerous when they were designed, manufactured, tested, assembled, marketed, distributed, and sold by Defendant Taser for reasons including but not limited to the following: (a) The subject taser was defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner which would kill or seriously injure the intended target, including Phillip McCue; (b) The subject taser was defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner that would subject the intended target, including Phillip McCue, to an increased and unreasonable risk of death or serious bodily injury; (c) The subject taser was defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner that did not adequately convey, instruct, or warn users, including law enforcement personnel, of the serious health risks associated with multiple taser deployment; (d) The subject taser was defective and unreasonably dangerous because they were designed, manufactured, tested,

assembled, marketed, distributed and sold in a manner that failed to provide adequate and reasonable training instructions and warnings to users, including law enforcement personnel, regarding the proper and *safe use* of the tasers; and (e) The subject taser was defective and unreasonably dangerous because they failed to meet all applicable and reasonable safety standards including but not limited to Defendant Taser's internal standards and other reasonable industry standards.

64. On or about September 12, 2012, the subject taser and all of its respective component parts, were substantially unchanged from their original respective conditions, when initially sold and distributed by Defendant Taser.

65. For the reasons set forth above, the subject taser was unreasonably dangerous to members of the public generally, and to Phillip McCue specifically.

66. The defect(s) described above directly and proximately contributed to/caused Phillip McCue's injuries and death, in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Phillip McCue's injuries and eventual death.

67. The actions of Defendant Taser as set forth above constitute willful and wanton misconduct in disregard of the rights and safety of Phillip McCue, and warrant the imposition of punitive damages against Defendant Taser.

　　　　**WHEREFORE**, Plaintiff demands judgment against Defendant Taser, for compensatory damages, for punitive damages and for costs far in excess of the minimum jurisdictional threshold of this Court and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT VI
## NEGLIGENCE (TASER)

68. Plaintiff incorporates by reference all of the above paragraphs as if set forth fully herein.

69. Defendant Taser knew or in the exercise of due care should have known that the subject tasers would be used without inspection in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to members of the public generally, and to Phillip McCue specifically.

70. Defendant Taser was under a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings for, package, distribute, instruct/train law enforcement personnel about, and/or sell the subject tasers in a reasonably safe condition so as not to present a danger to members of the general public, including but not limited to Phillip McCue, who foreseeably would come into contact with the subject tasers.

71. Defendant Taser breached their duty by negligently designing, manufacturing, assembling, testing, inspecting, labeling, packaging, failing to warn, marketing, distributing, instructing/training law enforcement personnel about, and/or selling the subject tasers when such products were not in reasonably safe condition for foreseeable use.

WHEREFORE, Plaintiff demands judgment against Defendant Taser, for compensatory damages, and for costs far in excess of the minimum jurisdictional threshold of this Court and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT VII
## WRONGFUL DEATH (ALL DEFENDANTS)

72.    Plaintiff incorporates by reference all of the above paragraphs as if set forth fully herein.

73.    By reason of the foregoing, Plaintiff is entitled to recover from all Defendants, jointly and severally, for the wrongful death of Phillip McCue.

        **WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages, for punitive damages, and for costs far in excess of the minimum jurisdictional threshold of this Court and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT VIII
## NEGLIGENT/INTENTIONAL INFLICTION OF
## EMOTIONAL DISTRESS (ALL DEFENDANTS)

74.    Plaintiff incorporates by reference all of the above paragraphs as if set forth fully herein.

75.    By virtue of the foregoing, Defendants have intentionally or recklessly, or negligently, committed extreme and outrageous conduct or their conduct was by its nature certain or substantially certain to cause severe emotional distress, including conscious knowledge of impending death, to Phillip McCue, in the moments prior to his agonizing death.

76.    Likewise, the foregoing actions and omissions have caused severe emotional distress to Plaintiff Michael McCue, individually.

77.    To the extent that Defendantsø conduct was intentional or reckless, Defendantsø conduct was so extreme and outrageous as to exceed all possible bounds of decency.

78.   By virtue of the said conduct, Phillip McCue and Michael McCue individually have suffered severe emotional distress, so severe that no reasonable individual could be expected to endure it.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, for punitive damages, and for costs far in excess of the minimum jurisdictional threshold of this Court and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

Dated at Lewiston, Maine this 18th day of March, 2014.

/s/David Van Dyke, Esq.
Hornblower Lynch Rabasco & Van Dyke
261 Ash Street - P.O. Box 116
Lewiston, Maine 04243-0116
Tel. 207-786-6641
dvandyke@hlrvd.com

Carl D. McCue, Esq.
McCue Law Office LLC
40 Western Avenue
P.O. Box 655
Hampden, ME  04444

*Attorneys for Plaintiff MICHAEL MCCUE, individually and as Personal representative of the estate of Phillip McCue, Deceased*